IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENERPOL, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:17-CV-00394-JRG |
| | § | |
| v. | § | |
| | § | |
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is EnerPol, LLC's ("EnerPol") Emergency Motion to Strike Schlumberger's Previously Undisclosed Claim Construction Proposal From its Technology Tutorial and Claim Construction Briefing (Dkt. No. 85). On January 26, 2018, the Court held a hearing on the Motion. Having considered the Motion, and the Parties' arguments, the Court finds that the Motion should be and hereby is **DENIED**.

### I.   BACKGROUND

On October 4, 2017, this Court entered the Docket Control Order (Dkt. No. 34). Under the DCO, the Parties exchanged their proposed claim terms (P.R. 4-1) on October 18, 2017 (*Id.*) In accordance with P.R. 4-1, the Parties proposed the following terms for construction (Dkt. No. 86-1, Ex. 1; Dkt. No. 86-2, Ex. 2):

| EnerPol | Schlumberger |
|---|---|
| "polymer-continuous" – Claim 1 | "selected" – Claims 22, 24 |
| "liquid phase" – Claim 1 | "low-viscosity" – Claim 23 |
| "continuous" – Claim 24 | "solid form" – Claim 24 |
| "liquid phase" – Claim 24 | "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer" – Claim 24 |

On November 8, 2017 the Parties exchanged the following preliminary claim constructions for the proposed claim terms, in accordance with P.R. 4-2 (Dkt. No. 86-3, Ex. 3; Dkt. No. 86-4, Ex. 4):

| Disputed Claim Term | EnerPol's Proposed Construction | Schlumberger's Proposed Construction |
|---|---|---|
| "polymer-continuous" – Claim 1 | comprising an accumulated network of polymer such that one could travel from one side of a given sample to another within the polymer network | "polymer-continuous liquid phase" is a single limitation. EnerPol's apparent attempt to split this limitation is improper.<br><br>"polymer-continuous liquid phase" has a plain and ordinary [meaning] and requires no specialized construction.<br><br>For clarity, "polymer-continuous liquid phase" means a polymer that is entirely in liquid form. |
| "liquid phase" – Claims 1, 24 | a phase (e.g. polymer, mixture of polymer and a liquid) that takes the shape of its container | "polymer-continuous liquid phase" is a single limitation. EnerPol's apparent attempt to split this limitation is improper.<br><br>"polymer-continuous liquid phase" has a plain and ordinary [meaning] and requires no specialized construction.<br><br>For clarity, "polymer-continuous liquid phase" means a polymer that is entirely in liquid form. |
| "continuous" – Claim 24 | comprising an accumulated network such that one could travel from one side of a given sample to another within the network | "continuous liquid phase" is a single limitation. EnerPol's apparent attempt to split this limitation is improper.<br><br>"continuous liquid phase" has a plain and ordinary [meaning] |

|  |  | and requires no specialized construction.<br><br>For clarity, the "continuous liquid phase" is comprised of recited components that are entirely in liquid form. *See* "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer." |
|---|---|---|
| "selected" – Claims 22, 24 | Plain and ordinary meaning (chosen) | Plain and ordinary meaning, which for clarity is "chosen (intentionally) from a range of options" |
| "low-viscosity" – Claim 23 | having a low resistance to flow | Indefinite.<br><br>But to the extent the term is not indefinite, then it means "less than 0.1 poise." |
| "solid form" – Claim 24 | of definite shape and volume; not liquid or gaseous | "solid form" means "solid bulk form" |
| "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer" – Claim 24 | a polymer-continuous liquid phase comprising a dispersed carrier fluid | Schlumberger contends that this term has a plain and ordinary meaning:<br><br>For clarity, "the continuous liquid phase includes, but is not limited to, a degradable polymer that is entirely in liquid form with carrier fluid dispersed within it" |

On November 29, 2017, the Parties filed their Joint Claim Construction and Prehearing Statement (Dkt. No. 73), in compliance with P.R. 4-3. In the Joint Statement, Schlumberger's proposed constructions for the terms "liquid phase" and "polymer-continuous" were:

"polymer-continuous liquid phase" is a single limitation. EnerPol's attempt to split this limitation is improper.

"polymer-continuous liquid phase" has a plain and ordinary [meaning] and requires no specialized construction.

For clarity, "polymer-continuous liquid phase" means a polymer that is entirely in liquid form.

3

(Dkt. No. 73-2.) In addition, in both its P.R. 4-2 and 4-3 disclosures, Schlumberger's proposed construction for the term, "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer" referenced to two dictionary definitions of the word "phase," as extrinsic evidence. (*Id.* at 4; Dkt. No. 86-4, Ex. 4 at 4.)

On January 10, 2018, Schlumberger submitted a technology tutorial to the Court, in accordance with P.R. 4-5(a). (Dkt. No. 80.) In its tutorial, Schlumberger defined phase as "the portion of a physical system that has boundaries and is homogenous within those boundaries." (Dkt. No. 85 at 3.) Six days later, EnerPol filed an Emergency Motion to Strike Schlumberger's Previously Undisclosed Claim Construction Proposal From its Technology Tutorial and Claim Construction Briefing (Dkt. No. 85).

## II.   ANALYSIS

EnerPol seeks to strike the definition of "phase" from Schlumberger's technology tutorial and preclude Schlumberger from relying on any definition of "phase" in its responsive claim construction brief. (*Id.* at 9.) EnerPol contends that Schlumberger should be precluded from relying on any definition of the word "phase" in its responsive briefing because allegedly, (1) Schlumberger "expressly refused EnerPol's proposal to give a discrete definition to the claim term 'liquid phase,'"; and (2) Schlumberger "for the very first time, proposed a "new, limiting construction for the claim term 'phase.'" (*Id.* at 3.) EnerPol argues that Schlumberger's refusal to propose a construction for "liquid phase" in its P.R. 4-2 and 4-3 disclosures preclude Schlumberger from relying on its own definition of "phase" in its technology tutorial and in support of its constructions of "polymer-continuous liquid phase" and "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer." (*Id.* at 5 ("Perhaps if Schlumberger had abided by the Patent Rules and timely provided a construction for 'liquid phase,' this dispute could have been avoided.").)

4

The Court disagrees. Schlumberger's P.R. 4-2 and 4-3 disclosures clearly indicate Schlumberger's intention to rely upon the definition of "phase." (Dkt. No. 86-4, Ex. 4; Dkt. No. 73-2.) The Court finds that Schlumberger's constructions of "polymer-continuous liquid phase" and "continuous liquid phase . . . comprising the carrier fluid dispersed in the degradable polymer" are consistent with its definition of "phase," as proposed in the technology tutorial. (*Id.*) Schlumberger's constructions both emphasize that the "polymer-continuous liquid phase" and the "continuous liquid phase" require a "polymer that is entirely in liquid form." (*Id.*) Similarly, Schlumberger's technology tutorial defines a "phase" as "the portion of a physical system that has boundaries and is homogenous within those boundaries." (Dkt. No. 85 at 3.) Despite the fact that Schlumberger's explicit definition of "phase" was presented after Schlumberger's P.R. 4-3 disclosure, it is clear to the Court that a "polymer-continuous liquid phase" that is "homogenous" must logically be "entirely in liquid form." EnerPol cannot reasonably claim "surprise," particularly after Schlumberger's P.R. 4-3 disclosures explicitly refer to two dictionary definitions of "phase" as extrinsic evidence. (Dkt. No. 85 at 7; Dkt. No. 73-2 at 4.)

EnerPol also insists that Schlumberger's definition of "phase" is an attempt by Schlumberger to present a new disputed claim term, months after the P.R. 4-1 deadline has passed. (Dkt. No. 92 at 2.) Schlumberger represents to the Court that it does not seek a new construction of "phase." (Dkt. No. 91 at 1.) However, even if it were so, such a new construction would not preclude Schlumberger from presenting the disputed claim term. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1531, 1362 (Fed. Cir. 2008).

Here, EnerPol and Schlumberger have clearly conflicting definitions of "phase." EnerPol represents that "phase" could mean "a phase (e.g. polymer, mixture of polymer and a liquid) that

takes the shape of its container." (Dkt. No. 85 at 2.) Schlumberger represents that a phase refers to "the portion of a physical system that has boundaries and is homogenous within those boundaries." (*Id.* at 3.) The Parties dispute the scope of "phase," and in particular, whether a phase must be homogenous. If the Court fails to adjudicate the Parties' dispute regarding the proper scope of "phase," the Parties would ultimately be required to present these arguments to the jury. *O2 Micro*, 521 F.3d at 1362. In this case, prior to the *Markman* hearing and months before trial, the Court is in the best position to determine the proper construction of this claim term. *Id.* at 1362. *See also Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (finding waiver where parties did not propose that a term be construed at the *Markman* hearing and plaintiff argued for a construction in its post-trial motions). However, the Court notes that this duty is not without limits. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371–72 (Fed. Cir. 2016).[1] "Where the district court has resolved the questions about claim scope that were raised by the parties, it is under no obligation to address other potential ambiguities that have no bearing on the operative scope of the claim." *Id.* (citing *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016)). However, in this case, where EnerPol and Schlumberger have a fundamental dispute regarding the scope of "phase," where the dispute has been presented prior to the *Markman* hearing and prior to the *Markman* briefing, and where, as Schlumberger's counsel represents, such construction is "dispositive" to the case, the Court finds that it is both appropriate and necessary to consider the Parties' dispute over the claim term, "phase." (Dkt. No. 94.)

---

[1] "[A] reading of *O2 Micro* as preventing [district courts] from enforcing their own deadlines effectively places 'sand in the gears of the overall trial process' and disincentives litigants from crystallizing their disputes early in the case." *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, 876 F.3d 1326, 1329 (Fed. Cir. 2017) (O'Malley, J., dissenting).

### III. CONCLUSION

For the reasons set forth herein, EnerPol's Emergency Motion to Strike Schlumberger's Previously Undisclosed Claim Construction Proposal From its Technology Tutorial and Claim Construction Briefing (Dkt. No. 85) is **DENIED**.

The Court reminds the Parties that filing an Emergency Motion before the Court is an extremely disruptive process that represents to the Court that immediate action must be taken in order to prevent material, avoidable harm. The Court finds that the issue before it, whether a party has waived its ability to bring a disputed claim construction term before the Court, does not rise to the level of urgency that warrants the filing of an emergency motion. The Court analogizes the current situation to Schlumberger striking a match to light its cigar while sitting in the balcony of a crowded theater, with EnerPol in response jumping to its feet and screaming, "Fire!" There is no emergency here. The Court cautions these Parties and all practitioners to carefully consider whether or not the issue is truly an emergency—one that requires the Court to disrupt its schedule and the schedule of others—before filing an emergency motion.

In addition, the Court notes that this is not the first time the Parties have brought a dispute that could have been resolved by counsel without requiring such immediate attention by the Court. (*See* Dkt. No. 26.) The Court reminds the Parties and counsel of their continuing obligations to meet and confer as required by L.R. CV-7(h). The Court expects that future meetings will be conducted at a level of seriousness and candor to prevent such non-emergency motions.

Should these Parties ignore the guidance going forward, they may find themselves in a position where the Court feels compelled to issue sanctions and ultimately, they may push this case into a posture of being exceptional.

**So ORDERED and SIGNED this 31st day of January, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE